UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERRENCE HAWTHORNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-04139-JRS-MJD |
| ) | |
| BRYANT Lt., ) | |
| OWENS D.O.N., ) | |
| ANDREA K. FULTON, ) | |
| T. COLLINS RN, ) | |
| MILLER RN, ) | |
| A. RICHEY RN, ) | |
| WEXFORD OF INDIANA individually and in ) | |
| their official capacities, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING PLAINTIFF TO SHOW CAUSE**

**I. Background**

Plaintiff Terrance Hawthorne, an inmate currently confined at the Plainfield Correctional Facility, filed this civil rights action on October 7, 2019. The alleged events occurred when he was confined at the Correctional Industrial Facility (CIF).

The named defendants are: 1) Lt. Bryant; 2) D.O.N. Owens; 3) Andrea K. Fulton; 4) Tina Collins, RN; 5) Ms. Miller, RN; 6) A. Richey, RN; and 7) Wexford of Indiana (Wexford). Mr. Hawthorne alleges that medical staff had authorized him to have a bottom bunk pass for almost three years. In February of 2019, Lt. Bryant ordered him to move to a top bunk without consulting medical staff. Trying to get up on the top bunk, Mr. Hawthorne fell. Medical was called, and he was taken to medical on a back board for treatment. He was taken to the hospital a day or two later

1

where a CT scan revealed a badly bruised spinal cord. In August 2019, he had surgery on his neck and spinal cord. He further alleges that he had needed surgery for three years prior to this incident, but it had not been provided.

Mr. Hawthorne's claim against Lt. Bryant has been construed as one of deliberate indifference to a serious medical need. Mr. Hawthorne alleges that the medical defendants denied and delayed necessary medical treatment. He alleges that Wexford delayed necessary surgery due to cost considerations.

Defendant Bryant moved for summary judgment seeking resolution of the claim against him on the basis that Mr. Hawthorne failed to exhaust his available administrative remedies before filing this action. Dkt. 33. Defendants Owens, Fulton, Collins, Richey, and Wexford (the Medical Defendants) joined in that motion. Dkt. 40. To date, efforts to serve defendant Miller with process have not been successful, and she has not yet appeared in this case. For the reasons explained in this Entry, the defendants' motion for summary judgment must be **granted.**

## II. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are

drawn in the non-movant's favor. *See Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

The substantive law applicable to the motions for summary judgment is the Prison Litigation Reform Act ("'PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA." *Lanaghan v. Koch,* 902 F.3d 683, 687 (7th Cir. 2018). "Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015); *see also Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

### III. Discussion
#### A.  Undisputed Facts

At the time of the alleged incident, the CIF had a grievance program pursuant to Indiana Department of Correction (IDOC) policy. Dkt. 33-1, ¶ 5. The IDOC recognizes only one grievance process. *Id*., ¶ 9. The procedure in place at the time of the initial incident is entitled Offender Grievance Process, Policy and Administrative Procedure 00-02-301. *Id*., ¶ 8; dkt. 33-2. The applicable Offender Grievance Process went into effect on October 1, 2017. *Id.*

The Offender Grievance Process at CIF requires offenders to exhaust three steps prior to filing a lawsuit. Dkt. 33-1, ¶ 11. To fully exhaust the offender grievance process, Mr. Hawthorne must have completed the following steps: (1) an informal attempt to solve a problem or address a

concern, (2) submission of a written formal grievance outlining the problem or concern, and the response to that submission, which can be followed by, (3) a written appeal of the response to a higher authority and the response to that appeal. Dkt. 33-1, ¶ 10; dkt. 33-2 at 3. Exhaustion of the grievance process requires an offender to timely complete all three steps. Dkt. 33-1, ¶ 11.

Offenders are made aware of the Offender Grievance Process during orientation and have continual access to the policy in the law library. Dkt. 33-1, ¶ 18-20. Through the Offender Grievance Process, offenders may grieve the "actions of individual staff" or "any other concerns relating to conditions of care or supervision within the Department." Dkt. 33-1, ¶ 17; dkt. 33-2 at 3.

A review of the Offender Information System (OIS) indicates that Mr. Hawthorne was at the CIF from June of 2016 until August of 2019, at which time he was transferred to Plainfield Correctional Facility. Dkt. 33-1, ¶ 22. Each accepted Offender Grievance received at CIF is logged electronically, as outlined in the Offender Grievance Process. Dkt. 33-2 at 10. Mr. Hawthorne submitted three grievances concerning his bottom bunk pass. According to the grievances, Mr. Hawthorne fell from the top bunk on February 18, 2019, and seriously injured his spinal cord. Dkt. 33-4 at 1.

The first grievance, dated February 21, 2019, does not mention Lt. Bryant. It alleges that medical staff should not have allowed Mr. Hawthorne's bottom pass to expire on January 2, 2019. *Id*. This grievance was rejected and returned because that type of issue should have been discussed with medical staff first. Mr. Hawthorne was directed to submit a Request for Healthcare form, and if he was not satisfied with the outcome, he could file a formal grievance. *Id.* at 2.

Mr. Hawthorne filed a second grievance on March 1, 2019, alleging that due to a degenerative spinal condition, he had been given a bottom bunk pass. Dkt. 33-4 at 3. He was

reassigned to an upper bunk on February 13, 2019. *Id.* On February 18, 2019, he fell, which aggravated his back injury and caused great pain. *Id.* He acknowledged that medical staff had tentatively scheduled surgery, but he asked for a medical lay-in, medication for pain, and a permanent bottom bunk pass. *Id.* He stated that he had talked to medical staff a week ago but hadn't received a response. *Id*. The Grievance Specialist rejected and returned the grievance after checking with medical staff and determining that an outside consultation had been approved but Mr. Hawthorne had not submitted a Request for Healthcare to see a provider about his other requests. *Id.* at 4.

Mr. Hawthorne's third grievance, dated March 21, 2019, complained about "custody staff's" decision to move him from a lower bunk and sought compensation for his permanent injury. *Id.* at 5. This grievance was rejected as untimely because it was not filed within ten (10) days of the date of the incident. *Id.* at 6.

### B.  Discussion

The IDOC grievance process has three steps which an offender must complete: an informal resolution, a formal grievance, and an appeal to a higher authority. There are specific deadlines within which each step must be completed.

Mr. Hawthorne allegedly fell out of his upper bunk on February 18, 2019. The evidence is undisputed that Mr. Hawthorne's grievance filed against "custody staff" (of which Lt. Bryant is a member) seeking relief for his permanent injury after he fell, was not timely filed. Mr. Hawthorne argues that the Offender Grievance Process provides that once an offender tries to submit a grievance at any stage of the process but receives no response, he cannot move forward with the process. Dkt. 47 at ¶¶ 6, 8. He also believes that if an offender files a grievance too late, then he has exhausted the process. *Id*. Mr. Hawthorne is mistaken.

5

Even though the Offender Grievance Process *does* provide that "if the offender receives no grievance response within twenty (20) business days of being investigated by the Offender Grievance Specialist, the offender may appeal as though the grievance had been denied," dkt. 33-2 at 11, there is no evidence that Mr. Hawthorne submitted formal grievances to which he received no response. The Offender Grievance Process also provides that if an offender needs more time to submit a grievance, he must request an extension from the Warden. *Id.* at 13. There is no evidence that Mr. Hawthorne requested any extension of time to submit a grievance. The undisputed facts demonstrate that Lt. Bryant has met his burden of proving that Mr. Hawthorne "had available [administrative] remedies that he did not utilize." *Dale*, 376 F.3d at 656. Lt. Bryant is entitled to summary judgment.

As noted above, the Medical Defendants joined in Lt. Bryant's motion for summary judgment. They have not submitted additional evidence, but the record contains the formal grievances and responses that relate to Mr. Hawthorne's medical claims. Mr. Hawthorne submitted two formal grievances that were returned for failure to informally discuss his complaints with medical staff. He was informed that if he was still not satisfied after submitting Requests for Healthcare, he could then file a formal grievance. There is no evidence that Mr. Hawthorne ever refiled formal grievances or completed the two appeal steps associated with any formal grievance that he filed. Dkt. 46-2 at 21-33. Although Mr. Hawthorne has expressed a misunderstanding about how and when the Offender Grievance Process could be completed, he has not presented any evidence that the process was not available to him. *See Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016) ("A prisoner need not exhaust remedies if they are not 'available.'"). The undisputed record reflects that all offenders, including Mr. Hawthorne, are made aware of the Offender Grievance Process during orientation and can review the policy in the law library.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

The record demonstrates that there was an administrative remedy process in place, and Mr. Hawthorne failed to timely complete the grievance procedure before bringing his claims in this action. Mr. Hawthorne has not identified a genuine issue of material fact supported by admissible evidence that counters the facts established by the defendants.

The consequence of Mr. Hathorne's failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that his claims against the moving defendants must be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

### IV. Conclusion and Directing Plaintiff to Show Cause

For the reasons explained above, the motion for summary judgment filed by defendant Lt. Bryant, dkt. [33], and joined by defendants Owens, Fulton, Collins, Richey, and Wexford, dkt. [40] is **granted.** Mr. Hawthorne's motion to deny the motion for summary judgment, dkt. [45], is **denied.** The claims against these defendants are **dismissed without prejudice.**

Final judgment shall not issue at this time because not all claims have been resolved.

As noted, the Court has attempted but not yet successfully served LPN Melody Miller with process. *See* dkts. 9, 26, 27, 53. The same rationale for dismissal discussed in this motion for

summary judgment would apply to the claim against Nurse Miller. Mr. Hawthorne shall have **through June 5, 2020,** in which to **show cause** why any claim against Nurse Miller should not be *sua sponte* dismissed without prejudice for the same reasons the claims against all other defendants are being dismissed. *See* Rule 56(f) of the Federal Rules of Civil Procedure (allowing court to grant summary judgment to a nonmovant after giving notice and an opportunity to respond); *Pactiv Corp. v. Rupert*, 724 F.3d 999, 1001 (7th Cir. 2013) ("Many decisions in this circuit hold that a district judge must notify the litigants, and invite the submission of evidence and legal arguments, before resolving a case on a ground the parties have bypassed or using a procedure they did not propose.").

The Court will direct the issuance of final judgment after the claim against Nurse Miller is resolved.

**IT IS SO ORDERED**.

Date:   5/11/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

TERRENCE HAWTHORNE
139055
PLAINFIELD - CF
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Brandon Alan Skates
INDIANA ATTORNEY GENERAL
brandon.skates@atg.in.gov